For Print Publication

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DIEBOLD ELECTION SYSTEMS, INC., n/k/a/ PREMIER ELECTION SOLUTIONS, INC., Plaintiff, | § § § § § | |
| v. | § § | Case No. 4:07-cv-336 |
| AI TECHNOLOGY, INC., AMERASIA INTERNATIONAL TECHNOLOGY, INC. d/b/a AI TECHNOLOGY, INC. and KEVIN KWONG-TAI CHUNG, Individually, Defendants. | § § § § § § § | |

**MEMORANDUM OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS**

Before the court are the following:

1. Defendants AI Technology, Inc. and Kevin Kwong-Tai Chung's Reassertion of Their Motion to Dismiss and Motion for Section 1404 Convenience Transfer in Response to Plaintiff Diebold Election Systems, Inc.'s First Amended Complaint (de # 44)[1];

2. Defendant Amerasia International Technology, Inc., d/b/a AI Technology, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, for Improper Venue, for Failure to State a Claim Upon Which Relief Can Be Granted, for Failure to Plead Fraud with Particularity, and Motion for § 1404 Convenience Transfer (de # 47)[2];

3. Plaintiff's Response to Defendant Amerasia International Technology, Inc., d/b/a AI Technology, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, for Improper

---

[1] Docket entry # 44 is the Defendants' Motion with regard to the Plaintiff's First Amended Complaint. The Defendants simply reassert their Motion (de # 8) with regard to the Original Complaint. The briefing applicable to this Motion was thus submitted under the prior Motion.

[2] Amerasia International Technology, Inc. was added as a Defendant in the First Amended Complaint. Its position is precisely aligned with the other Defendants, and it, too, has adopted and asserted docket entry #8 as the basis for this Motion to Dismiss.

        Venue, for Failure to State a Claim Upon Which Relief Can Be Granted, for Failure to Plead Fraud with Particularity, and Motion for § 1404 Convenience Transfer (de # 48);[3]

4.     Defendant Amerasia International Technology, Inc., d/b/a AI Technology, Inc.'s Reply to Plaintiff's Response to Motion to Dismiss for Lack of Personal Jurisdiction, for Improper Venue, for Failure to State a Claim Upon Which Relief Can Be Granted, for Failure to Plead Fraud with Particularity, and Motion for § 1404 Convenience Transfer (de # 50);[4] and

5.     Plaintiff's Sur-Reply to Defendant Amerasia International Technology, Inc., d/b/a AI Technology, Inc.'s Reply to Plaintiff's Supplemental Response to Motion to Dismiss for Lack of Personal Jurisdiction, for Improper Venue, for Failure to State a Claim Upon Which Relief Can Be Granted, for Failure to Plead Fraud with Particularity, and Motion for § 1404 Convenience Transfer (de # 51).[5]

Based on the Defendants' Motions to Dismiss (de # 44 and 47), the briefing responsive thereto and the applicable law, the court is of the opinion that the Motions should be GRANTED because the court lacks personal jurisdiction over each of the Defendants and that this case should be DISMISSED WITHOUT PREJUDICE. Accordingly, the court need not reach the additional issues raised in the parties' briefing.

## I. BACKGROUND

This lawsuit arises out of a sequence of events in which Amerasia International Technology, doing business as AI Technology, decided not to pursue an opportunity to invest in Global Elections Inc., an entity later acquired by Diebold Election Services International, Inc. ("DESI"), which

---

[3] In its Response, the Plaintiff adopts and asserts its briefing responsive to docket entry # 8. Therefore, the applicable briefing on behalf of the Plaintiff can be found at docket entry # 14, 29 and 38.

[4] The Defendants adopt and reassert the briefing responsive to docket entry # 8 submitted to the court. Therefore, the Defendants' briefing on this Motion to Dismiss can be found at docket entry # 19, 35 and 36.

[5] *See* note 3, *supra*.

evidently is currently doing business as Premier Election Solutions, Inc.[6] This matter was removed to this court from the 366th Judicial District Court for Collin County, Texas on the basis of the parties' diverse citizenship.

Amerasia is a New Jersey corporation with its principal place of business in New Jersey. (Pl.'s First Am. Compl. ¶ 4.) Amerasia is in the business of selling adhesives to manufacturers in the electronics and military industries. (de # 8, page 5.) AI Technology is a New Jersey corporation with its principal place of business in New Jersey. (Pl.'s First Am. Compl. ¶ 2.) At the time the events giving rise to this lawsuit unfolded, AI was not a registered corporation, but Amerasia conducted all of its affairs under the AI name, a name which it registered in New Jersey and under which it conducted its business.[7] (Chung Dep. 11:11-13:14, attached as App. to de # 35.) Kevin Chung is an individual domiciled in New Jersey. (de # 8, page 5.) He was the President of Amerasia during the sequence of events giving rise to this lawsuit. (*See* Chung Dep. at 13:15-14:1.)

DESI is a Delaware corporation with its principal place of business in Texas.[8] (Pl.'s First Am. Compl. ¶ 1.) Global Elections Systems, Inc. ("Global USA") was a Texas company with its

---

[6]In its First Amended Complaint, the Plaintiff avers that it is now known as Premier. The court will refer to this entity as DESI.

[7]According to Chung's deposition testimony, Amerasia conducted all of its affairs under the name AI Technology. In 2003, Chung and Amerasia were able to establish a separate legal entity under the name AI Technology, Inc. when it was abandoned by a previous corporation that must have operated under either that name or a substantially similar name. *See* N.J. STAT. ANN. § 14A:2-2(1)(B) (West 2008).

[8]The Defendants have presented a printout from the website of the Texas Secretary of State suggesting, and the Defendants press the argument, that DESI's principal place of business is in Ohio. (de # 8, Ex. H.) For the purpose of this Motion, the court must accept DESI's position on this issue. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003)

principal place of business in Texas.  Global USA was in the business of manufacturing voting machines and related election products.  DESI closed its acquisition of Global USA in September of 2001.

In the summer of 2001, Amerasia and Global USA entered into negotiations for Amerasia to buy 2,000,000 shares of Global USA stock for $5 a share.  (de # 8, page 5.)  The deal was put together by the Louisville, Kentucky office of Hilliard, Lyons, Inc., a Kentucky-based investment bank.  (*Id*.)  In advance of engaging in serious negotiations, Chung, on behalf of Amerasia doing business as AI Technology, signed a Confidentiality Agreement (the Agreement), attached as Ex. 1 to de # 14, prohibiting Amerasia from disseminating or using to its commercial advantage any of the confidential information regarding Global USA that was to follow.  The Agreement was signed on July 24, 2001.  (*Id*.)

On July 25, 2001, Amerasia received a Confidential Memorandum (the Memorandum), which reads as a prospectus regarding the proposed investment in Global USA.  (de # 14, Ex. 2.)  In the "Company Overview" section of the Memorandum, two corporations are discussed.  Global Election Systems Inc., which was incorporated in Canada, is identified as "the 'Company,'" and it is described as the parent company of Global Election Systems, Inc., which is identified as "Global USA."  (de # 33.)  The Memorandum states in the next paragraph that "The Company" was formed in British Columbia, Canada and that "Global USA" was incorporated in Delaware, both in 1991.  (*Id*.)  The Memorandum goes on to discuss the strengths, weaknesses and outlook of both "The Company" and "Global USA," taking care not to conflate the two.  (de # 14, Ex. 2.)  It should be noted that, although the Memorandum denotes the Canadian company as "the Company," the Confidentiality Agreement denotes Global USA as "the Company."  Therefore, the Confidentiality

Agreement was signed by representatives of Global USA and Amerasia, and the focus of the Memorandum is on the prospects of the Canadian Company.

Amerasia decided not to pursue the investment, and, as mentioned above, DESI purchased Global USA later in 2001. On June 26, 2006, one of Chung's other corporations, Avante International Technology Corporation filed a patent infringement lawsuit against DESI and others in the United States District Court for the Eastern District of Missouri. (Pl.'s First Am. Compl. ¶ 9 n. 1.) It was during discovery conducted in that lawsuit that DESI learned of the events giving rise to this lawsuit. (*Id*. at ¶ 12.)

In July of 2007, the Defendants filed a Motion to Dismiss, or in the Alternative, to Transfer (de # 8). Because DESI amended its complaint prior to the court's reaching the Defendants' Motion to Dismiss, the court signed an order denying that Motion as moot and recognized that it would address the briefing on that Motion through the Defendants' reurging of same after the Complaint was amended. (*See* de # 52.) As noted in that order, the Defendants have simply reasserted the arguments addressed in the original Motion to Dismiss, and DESI has done the same with respect to its arguments responsive to that Motion.

## II.  LEGAL STANDARD

Once a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of establishing the district court's jurisdiction lies with the party seeking to invoke the court's jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When, as here, the court's resolution relies on briefing rather than an evidentiary hearing, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a *prima facie* case supporting jurisdiction." *Id*. When considering a motion to dismiss, the court must accept as true the plaintiff's

uncontroverted nonconclusory allegations and resolve all factual disputes in favor of the plaintiff. *Cent. Freight Lines Inc.*, 322 F.3d at 380. The court is to consider the existence of personal jurisdiction on the basis of the facts as they existed at the time the complaint was filed. *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990).

In determining whether there is personal jurisdiction over a non-resident defendant, a two-step analysis is conducted. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). First, absent a controlling federal statute regarding service of process, the court must determine whether the long-arm statute of the forum state permits the exercise of jurisdiction. *Id*. Second, it must be determined whether the exercise of jurisdiction comports with due process. *Id*. Because the Texas long-arm statute extends as far as Due Process allows, *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007), the analysis collapses into a single inquiry into whether the exercise of personal jurisdiction comports with the guarantees of the Fourteenth Amendment. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 n.1 (5th Cir. 2007).

A district court may not exercise personal jurisdiction over a nonresident defendant unless that party has "purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state" and exercise of that jurisdiction "does not offend traditional notions of fair play and substantial justice." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 813 (5th Cir. 2006) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). Thus, the non-resident defendant must first establish minimum contacts with the forum state "such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The focus is on "the quality and nature" of the defendant's invocation of "the benefits and protections of" the forum

state's laws. *Id*. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

If such minimum contacts do exist, the court must then determine whether the exercise of personal jurisdiction over a party is consistent with traditional notions of fair play and substantial justice by considering five factors. *Paz*, 445 F.3d at 814. Those factors are the burden on the defendant, the forum state's interests, the plaintiff's interest in convenient and effective relief, the judicial system's interest in efficient resolution of controversies, and the states' shared interest in furthering fundamental social policies. *Id*.

Specific jurisdiction exists where the plaintiff alleges a cause of action which grows out of or relates to a contact between the defendant and the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Elements which must exist for the court to exercise specific jurisdiction are: (1) the foreign defendant must purposely direct his activities at residents of the forum and (2) the cause of action must arise from or be connected with such activities. *Burger King*, 471 U.S. at 472.

Conversely, general jurisdiction arises when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum..." *Helicopteros*, 466 U.S. 408, 415 n.9. General jurisdiction exists only when the defendant's contacts with the state are "continuous and systematic." *Id*. at 416; *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952).

### III. DISCUSSION AND ANALYSIS

DESI begins by pointing out that Avante, a corporation that is not a party to this lawsuit, actively sought certification of its voting equipment with the Office of the Texas Secretary of State. In connection with this venture, Avante traveled to Texas to demonstrate its products, sent

correspondence to Texas, and paid an application fee to the Secretary of State's office.  These contacts are not attributable to any of the Defendants in this case, however.  DESI has not alleged an alter ego theory as to Avante and any of the Defendants in this case.  Indeed, DESI concedes in its Motion to Strike (de # 56) that "any reference to or reliance on Avante's conduct in this lawsuit is not relevant."  Therefore, while Avante's actions may have some bearing on whether any of the Defendants breached the Agreement, those contacts are immaterial to the discussion of personal jurisdiction.  *See Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 412 n. 7 (5th Cir. 2004); *Alpine View*, 205 F.3d at 218.

What is left for DESI is an insurmountable dearth of contacts between any of the Defendants and the State of Texas.  First, DESI argues that the Defendants should have reasonably anticipated being haled into court in the State of Texas based on the Confidential Memorandum received by Chung after he signed the Confidentiality Agreement on behalf of Amerasia.  The Confidential Memorandum provides a detailed look at both Global Election Systems Inc., the Canadian Company, and Global USA and the market in which they compete.  The Memorandum contains several references to McKinney, Texas and Global USA's presence there.  Thus, DESI argues that the Memorandum is a relevant contact insofar as it put the Defendants on notice that they may be called into a Texas court to answer for any disputes surrounding the Agreement that may have arisen.

However, the Memorandum was received by Amerasia on the day following its entry into the Confidentiality Agreement.  This, of course, makes perfect sense, as a corporation in Global USA's position would have been foolish to provide a potential buyer with sensitive information in advance of an agreement to keep that information private.  The only reference to Texas in the Confidentiality Agreement signed by Chung is a provision that the agreement was to be governed

by the laws of the State of Texas.  There is no other indication in the Confidentiality Agreement or anywhere else in the record before the court that indicates that any of the Defendants entered into that arrangement with any knowledge that the State of Texas or a citizen thereof would play any role in the proposed investment.

"[A] choice of law provision should neither be ignored nor considered sufficient alone to confer jurisdiction."  *Electrosource, Inc. v. Horizon Battery Techs.*, 176 F.3d 867, 873 (5th Cir. 1999).  Thus, while the court must consider this factor, it must only be considered in light of the other meaningful contacts with the forum created by the defendant.  In addition, simply contracting with the resident of a given state does not confer upon that forum jurisdiction over the foreign defendant.  *Moncrief Oil*, 481 F.3d at 311.  Moreover, an unwitting contact with Texas, such as this Confidentiality Agreement supplied by an investment banker in Kentucky which contains nothing but a Texas choice of law provision, is even less helpful to the court because it is insufficient as a matter of law for the court to conclude that these Defendants should reasonably anticipate that they will find themselves before a tribunal in Texas simply because of the choice of law provision.  *See Burger King* 471 U.S. at 474; *Cf. Cent. Freight*, 322 F.3d at 382 (noting that the defendant knew it was contracting with a forum resident).  Therefore, the references to the State of Texas in the Memorandum are inapposite here.  Had the parties entered into a purchase and sale agreement and had litigation arisen out of that contract, those references may very well have had relevance to personal jurisdiction analysis pertaining to these Defendants.  However, this litigation is a byproduct of the Confidentiality Agreement, and, aside from the choice of law provision and, as seen from the perspective of the Defendants when they entered into that agreement, the fortuity of Global USA's Texas residence, the Defendants do not have any contacts with the State of Texas.  Thus, their

contacts are insufficient to warrant the court's exercise of specific personal jurisdiction over them. *Burger King*, 471 U.S. at 475.

DESI's next alleged jurisdictional hook is a somewhat closer question, but, in the end, it presents an insufficient basis on which to ground the exercise of specific personal jurisdiction. DESI cites *Guidry v. United States Tobacco Comp.*, 188 F.3d 619, 628 (5th Cir. 1999) for the proposition that jurisdiction exists when "an act done outside the state [] has consequences or effects with the state" as long as "the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." That case relies on so-called effects jurisdiction explained by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).

*Calder* involved the question of whether specific jurisdiction over two Florida residents could be exercised by a California court in a lawsuit arising out of the distribution of a tabloid article they drafted. *See id*. at 784-85. The two individual defendants in that case had written an allegedly defamatory article about Shirley Jones, a California resident, and the article was nationally distributed in *The National Enquirer*. *Id*. at 785. The article was written on the basis of information provided by California sources, the *Enquirer*'s largest circulation was in California, *id*., and the journalists knew that the effects of the article would be most strongly felt by Ms. Jones in California. *Id*. at 789-90.

The Court upheld the lower court's finding that personal jurisdiction existed based upon the express direction of the journalists' intentional and tortious acts towards California. *Id*. at 789. Jones suffered emotional and professional harm in her community, the defendants intentionally aimed their activities at the forum state and California was the focal point of both the article and the harm suffered. *Id*. at 788-89. The Fifth Circuit Court of Appeals recognized these factual limitations

in *Guidry*. 188 F.3d at 629.

The Fifth Circuit has also pointed out that "the effects test is not a substitute for a nonresident's minimum contacts" in the Due Process analysis. *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997). In other words, the foreseeable effects of tortious behavior "are to be assessed as *part* of the" minimum contacts analysis, and other indicia of purposeful availment must exist to support personal jurisdiction. *Wien Air Alaska v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (quoting *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)). Otherwise, a defendant would be susceptible to service in any state in which a plaintiff alleged a legally cognizable injury without regard to the defendant's contacts with the forum. *Panda Brandywine Corp.*, 253 F.3d at 870. Turning such a blind eye to the foreign defendant's purposeful contacts would be plainly contrary to Supreme Court precedent. *E.g.*, *Burger King*, 471 U.S. at 474 ("The constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."). While the Defendants were aware that a Texas resident would be injured by their tortious conduct, that conduct was directed at the nationwide market in which DESI competed rather than at the State of Texas or its business community. *Cf. Cent. Freight*, 322 F.3d at 384 (noting that the defendant intentionally interfered with a contract between two parties it knew to be residents of the forum). Jurisdiction based on effects is thus rarely appropriate. *Moncrief Oil*, 481 F.3d at 314.

The record before the court would not support the exercise of jurisdiction over the Defendants. DESI has alleged that the Defendants breached the Agreement, misappropriated trade secrets (which also serves as the basis for DESI's Texas Theft Liability Act claim) and engaged in fraudulent inducement. What is absent is an allegation that any of the Defendants directed their allegedly tortious actions at the residents of the State of Texas.

Taking DESI's allegations as true, there is no question that the Defendants knew that their tortious activity would result in some harm to a Texas resident, because some of the actions necessarily would have come after the Defendants had received the Memorandum describing Global USA as a Texas corporation. This is essentially no different than a situation that the Fifth Circuit has said does not give rise to *Calder* jurisdiction. *Panda Brandywine Corp.*, 253 F.3d at 870. DESI has alleged that it suffered harm (presumably in Texas, its home state) as a result of the Defendants' tortious activities. This differs from the necessary "purposeful direct[ion]" of the Defendants' acts toward the State of Texas. *Id.* at 869 (quoting *Burger King*, 471 U.S. at 476); *Cf. Cent. Freight Lines, Inc.*, 322 F.3d at 383 (finding that the nonresident defendant "purposefully directed its in-state and out-of-state activities"at the forum resident "with the foreseeable and intended result of causing economic activity within the forum state."). There is no allegation or evidence that any of the alleged torts were aimed at Texas, rendering *Calder* jurisdiction inappropriate in this matter, even considering the existence of the choice of law term in the Agreement.

Though DESI originally conceded that the Defendants were unsusceptible to general personal jurisdiction, DESI now raises the possibility of its existence following the completion of additional jurisdictional discovery previously allowed by the court. Specifically, Kevin Chung testified that Amerasia had sold some samples of its products to Texas Instruments, a Texas corporation. In addition, Chung's deposition revealed to DESI that Amerasia and AI were the same entity at the time the Agreement was signed. Thus, DESI argues, there may be some patents registered under the Amerasia name that it would not have known to research before discovering this fact.

The "continuous and systematic" contacts between a foreign defendant and the forum state required to justify general jurisdiction presents a "difficult" standard for the resident plaintiff to

meet. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001). While Chung testified that he did not know the extent or duration of Amerasia's relationship with Texas Instruments, he did assert that Amerasia may have sent some samples to Texas. TI and Amerasia, including Kevin Chung individually, have not conducted any other business with each other in Texas. The Defendants have never paid taxes in Texas, have no offices or personnel in Texas, have no bank accounts in Texas and have not advertised in Texas. Thus, DESI's argument that Amerasia may have licensed patents previously unknown to DESI to Texas residents is unavailing. These are plainly not "continuous and systematic" unrelated contacts. *Alpine View*, 205 F.3d at 218 (finding that general jurisdiction did not exist on the basis of "isolated" sales in addition to other contacts). In short, it is evident that none of the Defendants have the amount and quality of contacts that would even approach the ballpark of "continuous and systematic." The court, therefore, lacks general jurisdiction over each of the Defendants.

### IV.  CONCLUSION

Based on the foregoing, the court finds that it lacks jurisdiction over each Defendant in this lawsuit. The court need not reach DESI's alternative requests for relief. The court is, therefore, of the opinion that the Defendants' Motions (de # 44 and 47) should be, and hereby are GRANTED. In addition, the court is of the opinion that DESI's request for additional jurisdictional discovery should be DENIED because the court has already given DESI the opportunity to conduct jurisdictional discovery (de # 25). Accordingly, it is

ORDERED that this lawsuit be DISMISSED WITHOUT PREJUDICE. Any motions left pending in this lawsuit are hereby DENIED AS MOOT.

IT IS SO ORDERED.
**SIGNED this the 26th day of June, 2008.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE